# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| HUNTON & WILLIAMS LLP, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 15-1203 (RC) |
| | : | | |
| v. | : | Re Document No.: | 73 |
| | : | | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, | : | | |
| | : | | |
| Defendant. | : | | |
| HUNTON & WILLIAMS LLP, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 15-1207 (RC) |
| | : | | |
| v. | : | | |
| | : | | |
| U.S. ARMY CORPS OF ENGINEERS, | : | | |
| | : | | |
| Defendant. | : | | |
| HUNTON & WILLIAMS LLP, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 15-1208 (RC) |
| | : | | |
| v. | : | | |
| | : | | |
| U.S. DEPARTMENT OF THE ARMY, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; SUA SPONTE GRANTING IN PART SUMMARY JUDGMENT TO PLAINTIFF

## I. INTRODUCTION

Plaintiff law firm Hunton & Williams LLP ("Hunton") filed this action under the Freedom of Information Act ("FOIA") against three federal agencies: the U.S. Environmental Protection Agency ("EPA"), the U.S. Army Corps of Engineers ("USACE" or "Corps"), and the U.S. Department of the Army ("Army").  The nine FOIA requests at issue in this suit concern the federal government's Clean Water Act ("CWA") and Rivers and Harbors Act ("RHA") jurisdiction over an industrial site in Redwood City, California.  The developer of the site, Hunton's client, had requested an Approved Jurisdictional Determination ("AJD") in 2012 in order to definitively establish the government's position on CWA and RHA jurisdiction over the site.  The Corps, which is a component of the Army, and the EPA share responsibility for issuing such AJDs.

The Corps prepared a draft AJD in 2014 addressing jurisdiction under both the CWA and RHA, but before that AJD was released, the Army intervened to perform a "legal and policy review" in its role as the Corps' parent agency.  After that legal and policy review was complete and the Corps had briefly returned to work on the AJD, the EPA stepped in and used its "special case" authority to take over the CWA portion of the AJD.  As far as the Court is aware, the EPA had still not issued the CWA portion of the AJD.

In order to learn more about each agency's decision-making process, Hunton filed FOIA requests with the EPA, the Corps, and the Army, and ultimately challenged each agency's response by filing suit.  The three agencies submitted motions for summary judgment on their responses to the requests, and Hunton submitted a motion for partial summary judgment

challenging the agencies' withholdings pursuant to FOIA Exemptions 5 and 6. The Court found that the agencies had performed adequate searches and that the agencies had properly justified some of their withholdings under the applicable FOIA exemptions. However, the Court found that none of the agencies had sufficiently justified their withholdings under Exemption 5 on the basis of the deliberative process privilege, nor had the Corps sufficiently justified its withholdings under Exemptions 5 based on either the attorney-work product privilege or attorney-client privilege. Therefore, the Court ordered supplemental briefing and submission of selected documents for *in camera* review so that it could determine the propriety of the agencies' withholdings under these exemptions. For the reasons given below, the Court grants the three defendant agencies summary judgment on the majority of their withholdings. However, a small number of redactions were either not sufficiently justified or simply do not fall under Exemption 5 or Exemption 6, and therefore, summary judgment as to those redactions is denied. The Court now orders the release of the erroneously redacted information that it has observed *in camera*, but does not order that the agencies reprocess and relabel their responsive records due to the low rate of error observed during this round of summary judgment briefing.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from several FOIA requests Hunton submitted in 2014 and 2015 seeking documents related to the federal government's response, or lack thereof, to its client DMB Redwood City Saltworks's 2012 request for an AJD on an industrial site[1] it plans to redevelop in Redwood City, California.[2] Compl. ¶ 5, ECF No. 1. It submitted its AJD request because, in

---

[1] The agencies alternatively refer to the industrial cite as Salt Plant, Saltworks, Redwood City, and Cargill.

[2] Just as it did in its prior Memorandum Opinion, the Court cites to Hunton's Complaint when providing background and contextual facts that the agencies do not dispute. *See Hunton &*

order to proceed with its planned redevelopment, Hunton's client would "need[] to know whether or to what extent the federal Government considers its Salt Plant facilities to be jurisdictional under either the RHA or CWA" as either "navigable waters of the United States" or "waters of the United States," respectively. Compl. ¶¶ 6–7. "The extent of federal jurisdiction will dictate whether Saltworks must apply for permits under the CWA and RHA before redeveloping the Site." Compl. ¶ 7.

The Corps holds sole authority to issue AJDs regarding RHA jurisdiction, while the Corps and the EPA share the authority to issue AJDs regarding CWA jurisdiction. Compl. ¶¶ 9–10. Because of the "EPA's historic involvement [in] and understanding" of the industrial site, when Saltworks submitted its request for an AJD in 2012, it requested that the EPA issue the CWA portion of the AJD. Compl. ¶ 10. Initially, the EPA declined to exercise this authority, informing Saltworks that the Corps would determine both the RHA and CWA portions of the AJD, with some EPA involvement as to the CWA portion. Compl. ¶ 11.

By early 2014, the Corps, which had maintained primary authority for issuing the AJDs over the industrial site, had completed its review and was almost ready to release its final AJD on both RHA and CWA jurisdiction. Compl. ¶¶ 15–18. At that point, the EPA and the Army intervened. In May 2014, the Assistant Secretary of the Army for Civil Works Jo-Ellen Darcy instructed the Corps not to release the AJD for the site because the Assistant Secretary's Office would be conducting a "legal and policy review" of the Corps' determination. This review "only considered the procedural aspects of the determination and did not in any way consider the substantive question of whether the property in question is in fact jurisdictional." Darcy Mem.

_Williams LLP v. U.S. Envtl. Prot. Agency_ ("_Hunton I_"), 248 F. Supp. 3d 220, 229 n.3 (D.D.C. 2017).

for the Chief of Engineers at 1, Ex. 1, ECF No. 46-1. Once the Army had finished this review in November 2014 and returned the matter to the Corps, the Corps sent a draft of its AJD to the EPA. The draft analyzed jurisdiction under both the RHA and the CWA. Then, in March 2015, EPA decided to use its "special case" authority to take over responsibility for the CWA portion of the AJD. As a result, that same month, the Corps issued an AJD addressing jurisdiction under the RHA only. Compl. ¶ 27. As far as the Court is aware, the EPA has yet to issue its decision regarding CWA jurisdiction.[3]

Seeking information on the EPA's, Corps', and Army's protracted decisionmaking processes, Hunton filed several FOIA requests with the agencies. As to the EPA, Hunton filed a FOIA request in May 2014 seeking:

> 1. Any and all documents related to the DMB Redwood City Salt Plant (also known as DMB Redwood City Saltworks project, Redwood City Saltworks project site, Redwood City salt production facilities, or Cargill operations in Redwood City) since January 1, 2014.
>
> 2. Any and all communications between EPA (all offices) and the other parties, including but not limited to the Corps (all offices), the Department of the Army (all offices, including the Office of the Assistant Secretary of the Army for Civil Works), Congress (members and staff), other Executive Branch employees, and non-government third parties, related to the DMB Redwood City Salt Plant (also known as DMB Redwood City Saltworks project, Redwood City Saltworks project site, Redwood City salt production facilities, or Cargill operations in Redwood City) since January 1, 2014.
>
> 3. Any request (other than this letter) from any entity or person for any documents relating to the DMB Redwood City Salt Plant (also known as DMB Redwood City Saltworks project, Redwood City Saltworks project site, Redwood City salt production facilities, or

---

[3] Defendants contend that part of the reason for this delay is that Hunton's client, Saltworks, twice asked the EPA to hold off for six months on determining CWA jurisdiction while Saltworks "evaluate[d] proposals for the future." *See* Defs.' Reply Ex. 1, ECF No. 80-1 (emails from Saltworks's Eneas Kane to EPA Region 9 Chief of Staff Jessica Kao).

> Cargill operations in Redwood City) received on or after January 1,
> 2014, and all documents, communications, and records relating to
> such a request, including any response by EPA to that request.

Compl., Ex. E, ECF No. 1-5. Hunton twice requested that the temporal scope of its request be expanded to include any documents generated since its previous request. Additionally, in March 2015, Hunton submitted a fourth request to the EPA seeking: "the Corps' 'final' CWA JD (with attachments) and/or 'final' combined RHA and CWA JD (with attachments) for Redwood City Saltworks. By 'final,' [Hunton meant] the version of the document that was prepared for signature by Major General Peabody (whether or not the document was ever actually signed), and sent to the EPA." Compl., Ex. N, ECF No. 1-14 (footnotes omitted).

In May 2014, Hunton also sent a request to the Corps that was nearly identical to its May 2014 request to the EPA, and thrice expanded the temporal scope of its request to include more recent documents. *See* 15-cv-1207, Compl., Ex. E., ECF No. 1-5; Compl., Ex. F, ECF No. 1-6; Compl., Ex. G, ECF No. 1-7. In March 2015, Hunton also submitted a nearly identical request to the Army, but never expanded the temporal scope of its request. *See* 15-cv-1208, Compl., Ex. E, ECF No. 1-5. Unsatisfied with the agencies' responses, Hunton filed suit.

Following an initial round of summary judgment briefing, the Court determined that all three agencies had performed adequate searches for responsive records. *Hunton I*, 248 F. Supp. 3d at 236. The Court also granted summary judgment to the Army as to its withholdings pursuant to Exemption 5 on the basis of the attorney-client privilege, as well as its withholding of its employees' contact information pursuant to Exemption 6. *Id.* at 255, 257.[4] However, the

---

[4] While Hunton briefly objected to the Corps' use of Exemption 6, the Court found its argumentation so thinly developed that it deemed the objection waived, and granted summary judgment to the Corps. *See Hunton I*, 248 F. Supp. 3d at 256 n.44. The Court did not address the EPA's withholdings pursuant to Exemption 6.

Court denied summary judgment as to the Army's withholding of the names of Army employees appearing in responsive records pursuant to Exemption 6, and ordered that those names be released. *Id.* at 257–59. Additionally, the Court denied summary judgment as to all three agencies regarding their withholdings under Exemption 5 on the basis of the deliberative process privilege because none of the agencies had provided sufficiently detailed explanations of their withholdings under the privilege. *Id.* at 240. The Court similarly denied the Corps summary judgment on its withholdings pursuant to Exemption 5 on the bases of the attorney-client privilege and the attorney work product privilege. *Id.* at 251.

Given these deficiencies, the Court ordered supplemental briefing so that the agencies could better explain their redactions, and also ordered that each agency submit "a representative selection of a portion of the responsive documents" for *in camera* review. Order, ECF No. 62. The parties recommended that they submit 120 representative documents to the Court—20 selected by Hunton, and 100 selected at random by the Defendants, subject to certain restrictions. *See* Joint Proposed Case Management Plan, ECF No. 65. Having received the 120 selected documents, Defendants' updated *Vaughn* Indices, and the parties' supplemental briefing, the Court now grants summary judgment as to the majority of Defendants' redactions, but denies it as to a few.

### III. LEGAL STANDARD

FOIA "sets forth a policy of broad disclosure of Government documents in order 'to ensure an informed citizenry, vital to the functioning of a democratic society.'" *FBI v. Abramson*, 456 U.S. 615, 621 (1982) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). The Act mandates release of properly requested federal agency records, unless the materials fall squarely within one of nine statutory exemptions. *Milner v. Dep't of Navy*, 562

U.S. 562, 565 (2011); *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2011) (citing 5 U.S.C. § 552(a)(3)(A), (b)).  Additionally, FOIA "requires that even if some materials from the requested record are exempt from disclosure, any 'reasonably segregable' information from those documents must be disclosed after redaction of the exempt information unless the exempt portions are 'inextricably intertwined with exempt portions.'"  *Johnson v. EOUSA*, 310 F.3d 771, 776 (D.C. Cir. 2002) (citing 5 U.S.C. § 552(b) and *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Def. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "material" fact is one capable of affecting the substantive outcome of the litigation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-movant, *see Anderson*, 477 U.S. at 255.

To carry its burden, the agency must provide "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of the withheld document to which they apply."  *Elec. Privacy Info. Ctr. v. U.S. Drug Enf't Agency*, 192 F. Supp. 3d 92, 103 (D.D.C. 2016) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)).  In conducting its

review, a court may also rely on its own *in camera* examination of disputed documents to determine whether they were properly withheld under the claimed statutory exemptions. *See* 5 U.S.C. § 552(a)(4)(B); *see also, e.g.*, *Citizens for Responsibility and Ethics in Washington v. Nat'l Archives and Records Admin.*, 715 F. Supp. 2d 134, 140–42 (D.D.C. 2010) (relying on the Court's *in camera* review to resolve whether documents had been properly withheld). The Court reviews the agency's explanations *de novo*, and will endorse an agency's decision to withhold information if the justification for invoking a FOIA exemption "appears 'logical' or 'plausible.'" *Pinson v. U.S. Dep't of Justice*, 245 F. Supp. 3d 225, 239 (D.D.C. 2017) (quoting *Wolf v. CIA*, 473 F.3d 370, 374–75). Nonetheless, "exemptions from disclosure must be narrowly construed . . . and conclusory and generalized allegations of exemptions are unacceptable." *Morley v. CIA*, 508 F.3d 1108, 1114–15 (D.C. Cir. 2007) (citation and internal quotation marks omitted).

Even if a nonmovant does not respond to a motion for summary judgment, the court cannot grant the motion as conceded. *See Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) ("Under the Federal Rules of Civil Procedure, a motion for summary judgment cannot be 'conceded' for want of opposition. 'The burden is always on the movant to demonstrate why summary judgment is warranted. The nonmoving party's failure to oppose summary judgment does not shift that burden.'" (quoting *Grimes v. District of Columbia*, 794 F.3d 83, 97 (D.C. Cir. 2015) (Griffith, J., concurring))). "The District Court 'must always determine for itself whether the record and any undisputed material facts justify granting summary judgment.'" *Id.* (quoting *Grimes*, 794 F.3d at 97 (Griffith, J., concurring)). Therefore, the Court reviews the propriety of each redaction, even those that have not been challenged. *See Pinson v. U.S. Dep't of Justice*, 2018 WL 2336103, at *8 (D.D.C. May 23, 2018).

# IV.  ANALYSIS

Having granted summary judgment on the adequacy of the agencies' searches for responsive records, as well as a portion of the agencies' withholdings under Exemptions 5 and 6, the Court is left to decide, after reviewing a sampling of responsive records *in camera*, whether the agencies have properly invoked Exemption 5 on the basis of the deliberative process privilege, and whether the Corps has properly invoked Exemption 5 based on either the attorney-client privilege or attorney work product privilege.  The Court also reviews a portion of the agencies' Exemption 6 withholdings.  For the reasons set forth below, the Court grants summary judgment to the EPA on both its Exemption 5 and Exemption 6 withholdings, and it grants summary judgment to the Army on its Exemption 5 withholdings, but not all of its Exemption 6 withholdings.  Additionally, it grants summary judgment to the Corps on most of its Exemption 5 withholdings, but denies summary judgment as to a portion of its withholdings pursuant to Exemptions 5 and 6.

## A.  Exemption 5

Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party . . . in litigation with the agency."  5 U.S.C. § 552(b)(5).  This exemption protects documents "normally privileged in the civil discovery context," *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 365 F.3d 1108, 111 (D.C. Cir. 2004), such as materials shielded by the attorney–client privilege, the attorney work product privilege, and "what is sometimes called the 'deliberative process' privilege," *U.S. Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).  All three exemptions are at issue in Defendants' renewed motion for summary judgment.

### 1. Deliberative Process Privilege

In its prior Memorandum Opinion, the Court found that none of the agencies had sufficiently justified through their declarations and *Vaughn* Indices their withholdings pursuant to Exemption 5 on the basis of the deliberative process privilege. *Hunton I*, 248 F. Supp. 3d at 240. In this new round of briefing, Hunton only challenges one *Vaughn* Index entry in particular, and instead urges the Court to perform a thorough *in camera* review to ensure that no responsive text was impermissibly redacted. *See* Pl.'s Mem. Opp'n Mot. Summ. J. at 9–10, ECF No. 76. Having now reviewed a sampling of the documents withheld pursuant to this privilege, the Court grants summary judgment to the Army and EPA on their deliberative process privilege withholdings, and grants in part and denies in part summary judgment to the Corps on its deliberative process privilege withholdings.

The deliberative process privilege "covers documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)). The purpose of the exemption is to protect the decisionmaking process within the agency or between agencies by allowing for the free flow of ideas without fear of premature disclosure to the public. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). In order to withhold information pursuant to the privilege, an agency must demonstrate that the information is both (1) predecisional, or "generated before the adoption of an agency policy," and also (2) deliberative, or "reflect[ing] the give-and-take of the consultative process." *Id.*

When the deliberative process privilege is at issue, the need for an agency to describe all of the information it withheld is "particularly acute because 'the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process.'" *Animal Legal Def. Fund v. Dep't of Air Force*, 44 F. Supp. 2d 295, 299 (D.D.C. 1999) (quoting *Coastal States*, 617 F.2d at 867). If the agency does not provide "'the minimal information necessary to make a determination' concerning applicability of the deliberative process privilege" then the court should deny the agency summary judgment. *See Elec. Frontier Found. v. U.S. Dep't of Justice*, 826 F. Supp. 2d 157, 173 (D.D.C. 2011) (quoting *Coastal States*, 617 F.2d at 861).

Therefore, to justify its application of the deliberative process privilege, an agency must address the following areas: "(1) the nature of the specific deliberative process involved, (2) the function and significance of the document in that process, and (3) the nature of the decisionmaking authority vested in the document's author and recipient." *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 189 (D.D.C. 2013) (citing *Senate of P.R. v. U.S. Dep't of Justice*, 823 F.2d 574, 585–86 (D.C. Cir. 1987); *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 257–58 (D.C. Cir. 1982)). In addition, other courts in this district have held, and the D.C. Circuit has suggested, because of the underlying purpose of the exemption, that "the agency must make the additional showing that disclosure would cause injury to the decisionmaking process." *Nat'l Sec. Archive v. CIA*, 859 F. Supp. 2d 65, 70 (D.D.C. 2012), *aff'd*, 752 F.3d 460 (D.C. Cir. 2014); *see also Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 258 (D.C. Cir. 1977) ("An agency cannot meet its statutory burden of justification by conclusory allegations of possible harm. It must show by specific and detailed proof that disclosure would defeat, rather than further, the purposes of the FOIA."); *Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp.

2d 252, 259 (D.D.C. 2004) ("The deliberative process privilege exists to prevent injury to agency decisionmaking. . . . [s]uch harm can not be merely presumed . . ." (internal citation omitted)). With these requirements in mind, the Court evaluates each agency's withholdings pursuant to the deliberative process privilege in turn.

### a. EPA

The Court explained in its prior Memorandum Opinion that "[b]ecause EPA d[id] not sufficiently describe the particular decisionmaking process or the function of the records in that process," the Court could not grant the EPA summary judgment on its deliberative process privilege withholdings. *Hunton I*, 248 F. Supp. 3d at 242. The Court further explained that, "[w]ithout connecting each record to a particularized process, the Court c[ould ]not understand each 'individual document and the role it play[ed] in the administrative process.'" *Id.* at 242 n.24 (quoting *Animal Legal Def. Fund, Inc.*, 44 F. Supp. 2d at 299). Therefore, the Court ordered that the EPA submit a sampling of the documents it had withheld pursuant to the deliberative process privilege for the Court's review. The Court explained that during its *in camera* review, it would "focus on whether the withheld materials are both predecisional and deliberative, as required by the deliberative process privilege, as well as whether they constitute 'secret law' such that they are removed from the protections of the deliberative process privilege." *Id.* at 249.

All in all, the Court finds that the EPA's supplemental *Vaughn* Index accurately describes how most of the redacted text is both predecisional and deliberative. *See generally* EPA Supp. *Vaughn* Index, ECF No. 73-1. The decisionmaking processes involved in these documents mainly involve EPA Region 9's decision to request permission from EPA Headquarters to place the Cargill AJD on its "special case list," *see, e.g.*, DOC-002, 014, 027, 073 (emails between

EPA personnel discussing the reasons the Cargill AJD should be placed on the special case list and discussing how to coordinate with the Corps given that Region 9 was considering making this recommendation); EPA Headquarters' decision whether to grant that request, which it ultimately did in March 2015, *see, e.g.*, DOC-051, 071, 178, 273, 275 (emails and a memorandum between EPA personnel coordinating the timing of the EPA's determination to put the Cargill AJD on the special case list); coordination between the EPA, Army, and the Corps regarding how a decision on the Cargill CWA AJD would be reached, *see, e.g.*, DOC-174, 178 (emails between EPA and Corps discussing the timing of the process); and the EPA's decisions on how to react to different actions taken by the Corps and the Army regarding the Cargill CWA AJD, *see, e.g.*, DOC-072, 169, 184, 216, 230, 288 (emails between EPA personnel discussing the timing and wisdom of the other agencies' actions and a draft Corps memorandum containing handwritten notes from EPA attorneys). Each *Vaughn* Index entry explains under which particular decisionmaking process each document falls. *See generally* EPA Supp. *Vaughn* Index.

The Court also finds that the EPA has sufficiently demonstrated how the withheld portions of each document are either deliberative or describe the details of a deliberative process. These documents include draft documents, *see, e.g.*, DOC-051, 322; suggested talking points, *see, e.g.*, DOC-014, 027, 100; suggested edits to documents, *see, e.g.*, DOC-277; handwritten notations on documents, *see, e.g.*, DOC-169; and emails containing requests for advice, *see, e.g.*, DOC-002, 275; suggested next moves, *see, e.g.*, DOC-071, 072, 073, 184, 216, 273, 275; and summaries of documents, reports, and decisions that had not yet been finalized, *see, e.g.*, DOC-027, 042, 174, 178, 230, 288. All documents of this nature were properly withheld pursuant to the deliberative process privilege. *See Coastal States Gas Corp.*, 617 F.2d at 866 (holding that the deliberative process privilege "covers recommendations, draft documents, proposals,

suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency").

One draft of particular note included for *in camera* review was the "final" draft AJD, the most recent draft of the AJD that the Corps produced that included its jurisdictional determinations under both the RHA and CWA. *See* DOC-322. This was the document the Corps was prepared to release on March 18, 2015, right before the EPA finalized its decision to exercise its special case authority and take over responsibility for determining jurisdiction under the CWA. In its prior memorandum opinion, the Court indicated that "because the 'final' draft AJD was never finalized and has not—to this Court's knowledge—been adopted by any agency, the Court agree[d] with EPA that the deliberative process privilege could apply." *Hunton I*, 248 F. Supp. 3d at 246.

During the first round of summary judgment briefing, the Corps justified its withholding of this document, entitled both "(DRAFT) Memorandum for Record: Subject: Basis for Clean Water Act and Rivers and Harbors Act of 1899 Section 10 Approved Jurisdictional Determination, Redwood City Saltworks" and "Cargill Redwood City CA Final AJD, Peabody Final Changes, 18 MAR 2015.pdf," by emphasizing that "the Corps never signed the document, nor was it ever issued by the Corps." Corps Reply at 17, ECF No. 57. The EPA similarly justified this withholding in its first *Vaughn* Index. *See, e.g.*, EPA *Vaughn* Index at 293, ECF No. 40-4. While the Court found it "highly plausible" that the "final" draft AJD was exempt from disclosure, it ordered that the EPA clarify "such matters as how decisions like those in issue are reached; the role that staff discussion and memoranda play in such decisions; the manner in which such decisions are memorialized and explained; and whether such decisions are treated, in

later agency decisionmaking, as precedents." *Hunton I*, 248 F. Supp. 3d at 429 (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1204 (D.C. Cir. 1991)).

Having reviewed the "final" draft AJD *in camera*, as well as the email discussions regarding the purpose and effect of the document between Corps and EPA personnel, *see, e.g.*, DOC-322 (email from Corps Major General Peabody to EPA HQ official Ken Kopocis explaining the next steps the Corps would take if the EPA did not choose to exercise its "special case" authority), the Court is now able to determine that this document did not constitute a final decision in the CWA AJD process. While the document constituted the Corps' final decision on the matter, the document was ultimately sent to the EPA, along with a timeline of when the Corps planned to issue the decision, in order to allow the EPA, based on its review of the document, to invoke its special case authority. In effect, the document served as a proposal to the EPA: it had the option to either not act, thereby allowing the document to be finalized and issued, or, if it disagreed with what the document contained, to intervene and provide its own jurisdictional analysis under the CWA. Because the Court is now able to directly observe that this is the role the document played in the AJD process, it is able to grant summary judgment to the EPA on its withholding of this document under the deliberative process privilege.

In its prior Memorandum Opinion, the Court further indicated that when reviewing the EPA's documents *in camera*, it would be on the lookout for any "secret law" at play in the documents that would keep them from falling under the deliberative process privilege. *Hunton I*, 248 F. Supp. 3d at 249. Secret law is comprised of "orders and interpretations which [the agency] actually applies to cases before it," *Sterling Drug, Inc. v. FTC*, 450 F.2d 698, 708 (D.C. Cir. 1971), and which are "routinely used by agency staff as guidance," *Coastal States*, 617 F.2d at 869. Agencies may not keep these rules "hidden behind a veil of privilege because [they are]

not designated as 'formal,' 'binding,' or 'final.'" *Id.* at 867. When reviewing the EPA's

documents *in camera*, the Court did not identify any portion of the EPA's documents that

contained what appeared to be secret law concerning its decision to exercise its special case

authority. Indeed, each redaction submitted to the Court is clearly both predecisional and

deliberative. For that reason, the Court grants summary judgment to the EPA on its deliberative

process privilege withholdings.

### b. Army

Next, the Court evaluates the Army's withholdings under the deliberative process

privilege and grants the Army summary judgment on these withholdings. The Court previously

found the Army's *Vaughn* Index and declarations to be insufficiently detailed to allow the Court

to determine why the deliberative process privilege had been applied to certain records. *Hunton*

*I*, 248 F. Supp. 3d at 244. In particular, the Court found that the Army's *Vaughn* Index entries

"provide[d] only the fuzziest description of the deliberative process, and also omit entirely to

describe the 'function or significance' of the particular record or the decisionmaking authority

vested in the author." *Id.* Additionally, these entries lacked explanations of the "possible harms

that could result from releasing the withheld information." *Id.*

Many of the documents the Army has submitted for *in camera* review relate to its legal

and policy review of the Corps' AJD process. In its prior memorandum opinion, the Court

explained that "[b]efore it c[ould] consider whether the documents were predecisional or

deliberative, the Court must determine whether the legal and policy review was a deliberative

process at all." *Id.* at 250. In some situations, an agency's reexamination of its own behavior

does constitute a deliberative process. The Court explained that:

> Discussion of the merits of past efforts, alternatives currently
> available, and recommendations as to future strategy are

privileged if the documents bear sufficient indicia that they were part of the deliberative process . . . [including that] they were all written by subordinates to superiors, the authors had no decisionmaking authority, and the opinions expressed therein did not explain agency policy or establish agency guidelines or secret law.

*Id.* at 251 (quoting *Ashley v. U.S. Dep't of Labor*, 589 F. Supp. 901, 908 (D.D.C. 1983)). The Army responds that "the Army's legal and policy review was not a reexamination of agency behavior or past agency efforts," but rather "an Army Secretariat-level review of the procedure then being utilized by the U.S. Army Corps of Engineers for reaching its AJD of the Redwood City Salt Plant site." Defs.' Mem. Supp. Sum. J. at 13, ECF No. 73. It further explains that "[i]t was not a reexamination of Corps procedures; rather, it was a review to ensure that the Corps employed the proper procedure for reaching an AJD in a then pending case," meaning that the analysis employed in *Ashley v. Department of Labor* would not apply. *Id.* at 14. Instead, the Army argues that the legal and policy review was a deliberative process contributing to another, ongoing deliberative process, and the documents leading up to the final report were the types of documents that, because they reveal "the give-and-take of the consultative process," are covered by the privilege. *Coastal States Gas Corp.*, 617 F.2d. at 866.

Having reviewed the Army's supplemental *Vaughn* Index and sample documents *in camera*, the Court agrees on both counts. Many of the documents submitted to the Court for *in camera* review consist of emails discussing the need for the review, *see, e.g.*, Docs. 36, 104, 347 (emails from Army personnel explaining the Army's decision to conduct the review); emails coordinating the timing and logistics of the review, *see, e.g.*, Docs. 104, 183, 208, 334, 342, 347, 462 (emails discussing how to proceed with the Corps and EPA in light of the decision to institute a review, how to interact with Cargill's owner during the review, and the Army's own decision-making process in carrying out the review); and a draft of the review itself, *see, e.g.*,

Docs. 387 (draft memorandum of the review's findings and email transmitting and describing the draft). The remainder of the documents are emails coordinating or seeking input from Army personnel, *see, e.g.*, Docs. 53, 156, 170 (emails seeking and giving input on drafts of letters to non-profits concerned with the Cargill AJD and discussing communications strategy for the Cargill AJD); or drafts of documents that the Army ultimately released, *see, e.g.*, Docs. 156, 272, 273, 409 (draft letters and memoranda). These types of documents fall squarely within the privilege. *See Coastal States Gas Corp.*, 617 F.2d at 866 (holding that the deliberative process privilege "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency"). Each document was predecisional and contributed to one of the Army's decision-making processes: either deciding how best to communicate and work with outside actors, be they personnel in other agencies or the public, in light of the Army's decision to conduct the review, or the ultimate result of the review itself. Therefore, the Court grants the Army's motion for summary judgment for its redactions based on the deliberative process privilege.

### c. Corps

The Court next evaluates the Corps' withholdings under the deliberative process privilege. In its prior Memorandum Opinion, the Court denied the Corps' summary judgment because "[m]any of the entries in the Corps' *Vaughn* index for records withheld under the deliberative process privilege [we]re sparse, and d[id] not describe either the specific deliberative process, the function of the particular record, or the nature of the decisionmaking authority." *Hunton I*, 248 F. Supp. 3d at 243. Now that the Corps has submitted a sampling of documents for *in camera* review, and has greatly expanded upon the information included in its *Vaughn*

Index, the Court is able to conclude that the majority of these documents were properly redacted pursuant to the privilege.

The majority of the documents presented to the Court for *in camera* review are emails. *See generally* USACE *Vaughn* Index, ECF No. 73-2. Each entry in the Corps' supplemental *Vaughn* Index now explains each deliberative process the Corps seeks to protect through its redactions, as well as how these documents fit into that deliberative process. With these added details, as well as a review of each email *in camera*, the Court is able to determine that most of these emails fall within Exemption 5 based on the deliberative process privilege and are thus properly withheld. However, as explained below, three of the emails do not.

In particular, Document 40 includes an email on SPDUSACE002598–99 from Corps Major General John Peabody to Brigadier General Mark Toy and other Corps personnel which the Corps describes as "USACE leadership providing expanded guidance on the legal advice provided by the Chief Counsel concerning public response to inquiries." *USACE* Vaughn Index at 1. This message amounts to instructions from senior leaders to subordinates. Similarly, Document 1374 includes two emails that served as directives from supervisors to their subordinates. The first is from District Engineer John C. Morrow relaying instructions to his own staff. The second is the same directive email sent by Major General Peabody in Document 40.

Directives from decisionmakers are not covered by the deliberative process privilege. *See Coastal States Gas Corp.*, 617 F.2d at 686 ("instructions to staff" not covered by the deliberative process privilege"). Nevertheless, the Corps justifies this redaction by explaining that "the guidance contained therein is based off legal advice from the Chief Counsel as referenced in MG Peabody's comment." USACE *Vaughn* Index at 1. However, in the document

submitted for *in camera* review, the Corps merely labels this email as redacted because it is

"deliberative" and an "opinion," and not because it is covered by the attorney-client privilege.

The lack of justification for withholding based on the attorney-client privilege is logical, because

the legal advice on which these instructions is based is not apparent from the text of the email.

Because these emails are directives, they cannot be redacted pursuant to the deliberative process

privilege, the only withholding basis identified by the agency, and therefore must be released.[5]

As explained above, instead of challenging specific *Vaughn* Index entries that it deems

objectionable, Hunton has broadly explained that it does not believe that the three defendant

agencies have satisfied their burden of demonstrating that the redacted portions of these

responsive records fall under the deliberative process privilege.  However, Hunton does

challenge one particular entry regarding HQ USACE007348–51, insisting that the Corps'

description of the document as an "[e]ditorial conversation between HQUSACE regulatory and

Chief Counsel regarding scheduled meeting" that reflects the authors' thoughts and opinions is

too vague because it does not describe the role the document played in the deliberative process.

Pl.'s Opp'n at 9 (quoting USACE *Vaughn* Index at 15).  Hunton is correct that this entry does not

explain the role that this document played in the deliberative process, identified as "the

processing of the Cargill JD in light of the legal and policy review."  USACE *Vaughn* Index at

15.  However, upon review of the document *in camera*, the Court can determine that this email

exchange served the purpose of relaying a Corps attorney's candid opinion about the results of

the legal and policy review, and how those results would affect the Corps' process for

---

[5] The second redacted email in Document 40 is from Corps Chief Counsel David Cooper to Corps leadership recommending language to include in an email to a Corps attorney in California. This email is a proposal and a draft, and therefore it is covered by the deliberative process privilege.  *See Coastal States Gas Corp.*, 617 F.2d at 866.  Document 1374 also contains a redacted copy of this email.

adjudicating the Cargill JD, to another high-ranking Corps official.  This type of communication

falls within the deliberative process privilege's exemption of the release of "subjective

documents which reflect the personal opinions of the writer rather than the policy of the agency."

*See Coastal States Gas Corp.*, 617 F.2d at 866.  Because this document, as well as the majority

of the other documents submitted to the Court for *in camera* review, fall within the deliberative

process privilege, the Court grants summary judgment to the Corps on all of its deliberative

process privilege withholdings except for those mentioned above in Documents 40 and 1374.

## 2. Attorney-Client Privilege

In its prior Memorandum Opinion, the Court granted summary judgment to the Army for

its withholdings pursuant to Exemption 5 based on the attorney-client privilege, but denied

summary judgment to the Corps because its *Vaughn* Index and declaration were not detailed

enough for the Court to determine whether these documents actually fell within the ambit of the

privilege.  For example, the Corps' prior *Vaughn* Index did not specify "the identities of the

client and lawyer and whether legal advice was sought."  *Hunton I*, 248 F. Supp. 3d at 255.

Hunton did not challenge the EPA's use of the privilege in its prior summary judgment briefing,

and it does not challenge it in this round either.  Having reviewed the Corps' supplemental

*Vaughn* Index and its sample documents provided for *in camera* review, the Court now finds that

most of the documents the Corps has claimed are covered by attorney-client privilege are indeed

covered by the privilege.

"The attorney–client privilege protects confidential communications from clients to their

attorneys made for the purpose of securing legal advice or services. The privilege also protects

communications from attorneys to their clients if the communications 'rest on confidential

information obtained from the client.'"  *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997)

(quoting *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984)). "In the governmental context the 'client' may be the agency and the attorney may be the agency lawyer." *Tax Analysts*, 117 F.3d at 618. The government bears the burden of proving, through "detailed and specific information," that the withheld information falls within the attorney–client privilege. *See Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998). To succeed on a motion for summary judgment, the government must show:

> (1) [T]he holder of the privilege is, or sought to be, a client; (2) the person to whom the communication is made is a member of the bar or his subordinate and in connection with the communication at issue, is acting in his or her capacity as lawyer; (3) the communication relates to a fact of which the attorney was informed by his client, outside the presence of strangers, for the purpose of securing legal advice; and (4) the privilege has been claimed by the client.

*Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 841 F. Supp. 2d 142, 153–54 (D.D.C. 2012) (citing *In re Sealed Case*, 737 F.2d at 98–99). Courts have found that this privilege "also encompasses any opinions given by an attorney to his client based on, and thus reflecting, those facts as well as communications between attorneys that reflect client-supplied information." *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 114 (D.D.C. 2005).

Most of the documents the Corps withheld pursuant to the attorney-client privilege are either emails between Corps attorneys and Corps officials, emails between Corps officials on which Corps attorneys were carbon copied, or Corps attorneys' edits on draft documents. Emails between only Corps officials and Corps attorneys in which the authors exchange legal theories or provide information for the purpose of receiving legal advice regarding the processing of the AJD fall squarely within the privilege and Exemption 5 and were therefore properly withheld. *See, e.g.*, Docs. 37, 42, 236, 247, 269, 304, 579, 697, 873, 942, 1171, 1241, 1302, 1351; *see also* Bates Nos. 0069–0073, 2209–2211, 7262, 000378 (plaintiff's selection). Additionally, the

documents presented in the latter two categories also mostly fall within the privilege, except for those described below.

The Corps has questioned the Court's earlier determination that the Corps had provided insufficient explanations for why emails between Corps personnel on which attorneys were carbon copied or of which they were not the primary recipient should be covered by the privilege. *See* Defs.' Mem. Supp. Summ. J. at 20; *see also* Docs. 1263 (email to from one Corps leader to another, with Corps attorney carbon copied to keep her in the loop); Bates Nos. 2209–2211 (same). The Corps explains that their attorneys were carbon copied on these two email exchanges so that those attorneys could then provide legal advice based on the content of those emails, and further argues that "[i]t would produce a dissonant result if the same conversation which would be protected if the employee had chosen to forward the email to the attorney is not protected because he chose instead to copy the attorney." *Id.* at 21. The Court is unpersuaded by the Corps' email analogy—after all, if the official had written an email to his staff, and then forwarded the email to his attorney, the forwarded copy of the email would be covered by the privilege, but the original email to his staff would not have been privileged. Indeed, the Court finds that neither of these exchanges are covered by attorney-client privilege, though both are covered by the deliberative process privilege.

The D.C. Circuit has held that even if a document is sent not only for the purpose of obtaining legal advice, but also for some other reason, so long as obtaining or providing legal advice was one of the primary purposes for sending the communication, the communication is covered by the attorney-client privilege. *See In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 760 (D.C. Cir. 2014). After reviewing the Corps' supplemental *Vaughn* Index and its sample documents *in camera*, it is clear that on at least two occasions, the Corps attempted to withhold

documents pursuant to the attorney-client privilege when one of the primary purposes for sending the document was not the receipt of legal advice. Document 1263 is an email from Jane Hicks, Regulatory Division Chief in the San Francisco District to San Francisco Commander and District Engineer John Morrow, as well as three other Corps leaders, including San Francisco District Counsel Merry Goodenough. *See* Doc. 1263. Ms. Hick's email is a response to LTC Morrow, explaining what documents Ms. Hicks believed could be shared with the EPA and asking whether he concurred with her determination. She did not engage Ms. Goodenough for advice in any way, and the language used in her email indicates that she only expected a response for LTC Morrow. Therefore, while this document is clearly covered by the deliberative process privilege because it is primarily composed of a recommendation, it is not covered by the attorney-client privilege, because it does not appear that the pursuit of legal advice was one of the primary reasons it was sent.

Additionally, the two emails on Bates Nos. HQUSACE002210–11 do not appear to contain privileged information, although they do contain recommendations covered by the deliberative process privilege. The first email, from Corps Director of Civil Works Steve Stockton, addresses Chief of Engineers Tom Bostick, explaining events he expects to occur in the near future and suggesting that the Chief discuss the matter with Corps attorney Earl Stockdale. The email contains no privileged information relayed to Mr. Stockdale for the purpose of receiving legal advice. However, the email does contain several suggestions from a subordinate to his superior for next steps he should take, and therefore is covered by the deliberative process privilege. *Klamath*, 532 U.S. at 8. The second email is a response from Mr. Stockdale to Mr. Stockton, with the Chief carbon copied, explaining that Mr. Stockdale had informed the Chief of what he expected to happen next in the AJD process, along with his

recommendations for next steps.  These recommendations do not appear to contain any privileged information that Corps personnel might have given him for the purpose of receiving legal advice.  However, because this email is entirely composed of recommendations from a subordinate to his superior officer, it is covered by the deliberative process privilege.  *Id.*

In its original motion for summary judgment, Hunton also objected to the Corps' withholding of attorney notations on documents pursuant to Exemption 5 based on the attorney-client privilege.  *See* Pl.'s MPSJ Corps at 14, ECF No. 56.  The Court reserved judgment on the propriety of these redactions until it had a chance to review them *in camera*, but noted that "redaction—where it will not render the privilege futile—is the typical remedy in this jurisdiction."  *Hunton I*, 248 F. Supp. 3d at 255 n.43.

The Corps now argues that such redactions were proper under this privilege because the markings were used to communicate with other agency counsel about how the AJD should be determined.  *See, e.g.*, USACE *Vaughn* Index at 8 (discussing Docs. 906 and 941, which contain highlight markings, but no notes).  However, the Court is not convinced that the redaction, in full or in part, of these pages pursuant to the attorney-client privilege is permissible.  The attorney who highlighted portions of these documents only highlighted sentences that included facts and statistics.  Courts ordinarily do not find such mundane markings on already published materials to be privileged.  *See, e.g.*, *A.N.S.W.E.R. Coal. v. Salazar*, No. 05-0071, 2011 WL 2516419, at *2 (D.D.C. June 23, 2011) ("Those markings consist entirely of the word 'excerpts,' arrows directed to certain paragraphs, and the circling of certain language. The Court does not see how such markings are protected by the attorney-client privilege.").  Additionally, it is unclear from the record how these highlights, which the Corps explains were used to "communicate[]between agency counsel regarding the JD: a legal matter for which their client[] requested assistance,"

involve any sort of communication between a lawyer and client for the purpose of obtaining legal advice. *See* USACE *Vaughn* Index at 8; *Elec. Privacy Info. Ctr.*, 384 F. Supp. 2d at 114. Therefore, the Court finds that the agency has not met its burden of demonstrating that these markings are covered by the attorney-client privilege.

However, these documents are covered by the deliberative process privilege because they contain suggestions from Corps attorneys to other Corps personnel regarding which portions of the documents the attorney believed were important to the Cargill AJD process. *See* USACE Vaughn Index at 8 (explaining, with regard to both documents, that "[t]he selection of particular documents, and then certain portions within those documents, was part of the [a]ttorney's deliberative process of selecting pertinent facts she felt were relev[a]nt to the JD"). Both of these documents contain highlighted portions of publicly available text that Corps attorneys believed were important for the resolution of the Cargill AJD. If the Corps were to release these documents, with the highlighted text redacted, an interested individual could simply find copies of the original documents and infer from the location of the redactions which highlighted facts Corps attorneys believed were relevant to the resolution of the AJD. "[T]he deliberative process privilege directly protects advice and opinions and does not permit the nondisclosure of underlying facts *unless* they would indirectly reveal the advice, opinions, and evaluations circulated within the agency as part of its decision-making process." *Mead Data Cent., Inc.*, 566 F.2d at 254 n.28 (emphasis added). In the context of information that has been officially acknowledged by an agency, "courts in this Circuit have recognized [that e]ven if the information sought is exactly the same as the information which was acknowledged, . . . the very fact that a known datum appears in a certain context or with a certain frequency may itself be information that the government is entitled to withhold." *ACLU v. CIA*, 105 F. Supp. 3d 35, 52

(D.D.C. 2015) (internal quotation marks and citations omitted).  Here, just as in *ACLU v. CIA*,

the documents at issue contain "judgments its authors needed to make about the salience of

particular facts," and "[d]ivulging which facts were culled for inclusion, or even the topics that

agency officials selected for [review], [c]ould risk expos[ure of] their internal thought

processes."  *Id.* (internal quotation marks and citations omitted).  Therefore, while the highlights

in these documents are not covered by the attorney-client privilege, the documents were still

rightly withheld, in full, under the deliberative process privilege.

### 3.  Attorney Work Product Privilege

Next, the Court determines whether the Corps' withholdings pursuant to Exemption 5

under the attorney work product privilege were proper.[6]  The Court originally held that

"[b]ecause the Corps has not adequately shown that the records in question were prepared

'because of' potential litigation, the Court denies the Corps summary judgment."  *Hunton I*, 248

F. Supp. 3d at 251.  In response, the Corps has produced an email indicating that as early at

2007, agency attorneys were directing their clients to take certain protective measures because

the AJD was likely to lead to litigation.  *See* Email from Merry Goodenough to Craig Kiley

(Dec. 14, 2007), ECF No. 73-6.  Hunton argues that, although litigation may have been

contemplated, this email does not provide sufficient proof that the documents at issue were

created *because of* litigation.  *See* Pl.'s Opp'n at 11.  For the reasons explained below, the Court

finds that the majority of these documents were properly redacted pursuant to Exemption 5 and

the work product privilege.

---

[6] Each document for which the work product privilege was claimed has already been determined to have been permissibly withheld pursuant to the deliberative process privilege or attorney client privilege.  *See* USACE *Vaughn* Index; Sections IV.A.1.c, IV.A.2.

The work product privilege "shields materials 'prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative.'" *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005) (quoting Fed. R. Civ. P. 26(b)(3) and *Tax Analysts*, 117 F.3d at 620). The privilege protects "the mental impressions, conclusions, opinions, or legal theories of an attorney," as well as "factual materials prepared in anticipation of litigation." *Tax Analysts*, 117 F.3d at 620 (internal quotation marks omitted). The work product privilege originates from the longstanding recognition that "materials prepared by one's attorney in anticipation of litigation are generally privileged from discovery by one's adversary." *Nat'l Ass'n of Criminal Def. Lawyers v. U. S. Dep't of Justice Exec. Office for U.S. Attorneys*, 844 F.3d 246, 250 (D.C. Cir. 2016) (citing *Hickman v. Taylor*, 329 U.S. 495, 510–12 (1947) and *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998)).

"The work-product privilege does not cover 'any document prepared by any person in the Government with a law degree simply because litigation might someday occur' or else 'the policies of the FOIA would be largely defeated.'" *Coastal States Gas Corp.*, 617 F.2d at 865. The Court must apply a "'because of' test, asking whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *United States v. Deloitte LLP*, 610 F.3d 129, 137 (D.C. Cir. 2010). In order to establish that it has properly withheld information under the work product privilege, the agency must: "(1) provide a description of the nature of and contents of the withheld document, (2) identify the document's author or origin, (3) note the circumstances that surround the document's creation, and (4) provide some indication of the type of litigation for which the document's use is at least foreseeable." *Ellis v. U.S. Dep't of Justice*,

110 F. Supp. 3d 99, 108 (D.D.C. 2015), *aff'd*, No. 15-5198, 2016 WL 3544816 (D.C. Cir. June 13, 2016).

The Corps has explained that "agency counsel became engaged very early on in an effort to preserve and strengthen the agency's posture in any resultant litigation," and that therefore "[d]raft documents were provided to counsel for review and comment" and "[l]eadership requested advice of counsel in drafting responses to [various] inquiries." Defs.' Mem. Supp. Summ. J. at 24. A review of the documents submitted *in camera* demonstrates that the majority of these documents, including consultations between attorneys, *see, e.g.*, Docs. 213, 304, 308, 887, 949, 972, 989, 992, 1233, 1343; Bates Nos. 12627–28, 13231–32, SPN USACE000378 (relaying information regarding the AJD process in order to strengthen the agency's position should litigation challenging the AJD arise); advice given to non-legal personnel or offers to give advice to non-legal personnel in order to strengthen the agency's position in any impending litigation, *see, e.g.*, Docs. 42, 236, 247, 269, 489, 942, 949, 1210, 1263; Bates Nos. 7031, 7262 (advice on how the AJD should be adjudicated and how agency employees should conduct themselves in order to strengthen the agency's position in any impending litigation); and edits on drafts or proposed language to use in drafts, *see, e.g.*, Docs. 150, 259, 304, 308, 579, 587, 661, 775, 887, 889, 915, 1091, 1325, 1374 (emails and draft documents), were created in part to strengthen the agency's position should either Saltworks or an environmental protection organization challenge the Corps' actions regarding the AJD in court.

However, several documents were labeled as attorney work product without any justification as to why those documents should be considered work product. *See, e.g*, Docs. 156 (draft letter to another Corps employee), 608 (draft letter to legislator), 770 (draft form). "The proponent of work product protection bears the burden of demonstrating that the prospect of

litigation was an independent, legitimate and genuine purpose for the document's creation."
*Shapiro v. U.S. Dep't of Justice*, 969 F. Supp. 2d 18, 31 (D.D.C. 2013). Because the Corps has
not provided any explanation for how these documents contain attorney work product, they may
not be withheld pursuant to that privilege. However, because these documents are drafts, they
were properly withheld pursuant to the deliberative process privilege.

For the reasons given above, the Court finds that several documents were either
erroneously withheld pursuant to the work product privilege, and that their withholding pursuant
to the privilege was insufficiently justified. However, because each document that does not
qualify as work product was permissibly withheld pursuant to the deliberative process privilege,
they need not be released.

## B. Exemption 6

Each agency has also withheld some text from the documents it submitted *in camera*
pursuant to FOIA Exemption 6, which protects "personnel and medical files and similar files the
disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5
U.S.C. § 552(b)(6). In its prior Memorandum Opinion, the Court permitted the Army to
withhold the contact information of government personnel, but not the names of those personnel.
*See Hunton I*, 248 F. Supp. 3d at 257–58. Additionally, the Court permitted the Corps to redact
the personal contact information and conference call numbers of Corps personnel because
Hunton did not sufficiently explain how the public interest in the disclosure of this information
outweighed the personnel's' privacy interest in this information. *See id.* at 256 n.44. The Court
did not rule on the EPA's Exemption 6 redactions. Now, all three agencies have presented
documents to the Court for *in camera* review that contain redactions pursuant to Exemption 6.
The Court considers the propriety of these redactions in turn.

FOIA requires the release of personal information "if no significant privacy interest is implicated." *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008) (brackets and internal quotation marks omitted) (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)). This standard, however, "means less than it might seem," because a substantial privacy interest is "anything greater than a *de minimis* privacy interest." *Id.* at 1229–30. When a substantial privacy interest is implicated, the Court must balance this privacy interest against the public's interest in disclosure of the information. "The only relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would 'shed light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (brackets and internal quotation marks omitted) (quoting *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994)).

First, the Court examines the EPA's redactions pursuant to Exemption 6. In its order governing the briefing on the EPA's first motion for summary judgment, the Court did not require the EPA to submit a *Vaughn* Index for all of its Exemption 6 redactions, but rather only for the redactions Hunton challenged. Hunton ultimately challenged only one redaction, of text concerning the health of an EPA employee, which clearly falls within the ambit of Exemption 6's "medical files" exception. *See* EPA's 1st Mot. Summ. J. at 26, ECF No. 40; EPA *Vaughn* Index at 27, ECF No. 40-4; *Bast v. U.S. Dep't of Justice*, 665 F.2d 1251, 1254 (D.C. Cir. 1981). The documents now submitted for *in camera* review contain redactions pursuant to Exemption 6 that Hunton did not challenge when opposing the EPA's first motion for summary judgment, and does not challenge now either. *See generally* Pl.'s Opp'n. For example, in Document 174, the EPA redacted an employee's work email address and mobile phone number. As Hunton has not

identified any public interest in the disclosure of this information, the Court grants the EPA summary judgment on the redaction of the email addresses and phone numbers of government employees that appear in records responsive to the FOIA request, just as it granted the Army summary judgment on the same type of information. *See Hunton I*, 240 F. Supp. 3d at 257.

The EPA has also redacted a line in an email containing the number of hours two employees intended to take for vacation. *See* EPA *Vaughn* Index at 29. These two employees have more than a *de minimis* privacy interest in this information, and Hunton has not articulated any public interest in the release of this information. Therefore, the Court grants summary judgment on this redaction as well.

Next, the Court examines the Army's Exemption 6 redactions. In its prior Memorandum Opinion, the Court granted the Army summary judgment as to its redactions of the contact information of government personnel below the level of either general officer or senior executive service. *See Hunton I*, 248 F. Supp. 3d at 256–257. However, it ordered that the Army needed to release the names of such government personnel, because the "public interest in understanding what the government is up to outweighs the interest of the Army employees in privacy as to the names of the involved employees." *Id.* at 258.

Despite this order, the documents the Army submitted for *in camera* review continue to have the names of Army personnel redacted. These redactions are not mentioned in the Army's *Vaughn* Index, nor are they mentioned in its supplemental briefing. *See e.g.*, Army Docs. 53, 104, 156, 170, 183, 208, 307, 337, 347, 348, 350, 387, 462. The Court assumes that the Army intends to comply with its prior order once there is a final judgment in this case given that the Army has not provided an explanation for why these names should be redacted.

Last, the Court reviews the Corps' redactions under Exemption 6. In its prior Memorandum Opinion, the Court had granted summary judgment to the Corps only as to its redactions of conference call numbers and access codes. *See Hunton I*, 248 F. Supp. 3d at 256 n.44. However, the Corps' *in camera* documents contain redactions of names in two locations: first on page HQUSACE007868, and second on page SPN USACE004548. These redactions are not supported by citations to Exemption 6, or indeed any exemption, as justification. Without any explanation for why these names are being redacted, the Corps must disclose them.

## C. Segregability and Release

Because "the focus of FOIA is information, not documents . . . an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Mead Data Cent., Inc.*, 566 F.2d at 260. Rather, FOIA requires the agency to release "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b); *see also Mead Data Cent., Inc.*, 566 F.2d at 260 ("It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."). "Before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007).

Having reviewed a large sample of responsive records, the Court can confirm that, apart from the types of erroneous redactions listed above, the three defendant agencies have released all reasonably segregable non-exempt text. However, the Court must determine how the agency will remedy its erroneous redactions. Courts in this Circuit require agencies to reprocess responsive records and produce all non-exempt materials when a district court has determined a high rate of misapplying FOIA exemptions to responsive records. *See, e.g.*, *Bonner v. U.S. Dep't*

*of State*, 928 F.2d 1148, 1154 (D.C. Cir. 1991) ("[I]f the error rate for the sample of 63 documents should prove to be unacceptably high, the [agency] must then reprocess all of the over 1,700 documents at issue."); *Clemente v. FBI*, 854 F.Supp.2d 49, 58–59 (D.D.C. 2012) (ordering the agency to reexamine non-sample documents because the error rate in the agency's sample *Vaughn* index of 26.5% was "unacceptably high" (quoting *Meeropol*, 790 F.2d at 960)). Here, the error rate is far more negligible. The Court has determined that only two of the 120 sample documents, 40 and 1374, were wrongfully withheld from Hunton pursuant to Exemption 5. *See* Section IV.A.1.c. Every other sample document that was mislabeled as qualifying for withholding under either the attorney-client or work product privilege was properly withheld pursuant to the deliberative process privilege. *See* Sections IV.A.2, 3. And indeed, given the role that Corps attorneys played throughout the AJD process made clear by the *in camera* review, assisting decisionmakers as they adjudicated the AJD and dealt with the Army and the EPA, the Court cannot foresee any responsive record involving a Corps attorney that the Corps might try to label as covered by either the attorney-client privilege or the work product privilege that would not in fact be deliberative.

Courts in this district do not require agencies to reprocess all responsive records when review of either a sample *Vaughn* Index or a representative sample of responsive documents *in camera* reveals that the withholding error rate is negligible. *See, e.g.*, *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 48 F. Supp. 3d 40, 52 (D.D.C. 2014) ("Two mistakes out of 168 documents, however—an error rate of just over one percent—does not come close to the kind of error rate that has prompted courts to require further disclosures."); *Schoenman v. FBI*, 763 F. Supp. 2d 173, 187–88 (D.D.C. 2011) ("[Plaintiff] has cited no authority within this Circuit, and the Court is aware of none, providing that a 12.9 percent error

rate within the representative sample is sufficient to trigger a duty on the agency's part to reprocess all responsive records.").  Because the Corps error rate was similarly miniscule—two emails in 120 documents withheld in error under Exemption 5, and names in 15 out of 120 documents withheld in error under Exemption 6—the Court will only order the release of the improperly withheld portions of the sample documents, and will not order the Corps to reprocess the thousands of pages of responsive records that were not submitted for *in camera* review.  *See Hunton I*, 248 F. Supp. 3d at 232–33 (portions of 20,448 pages of 22,776 have already been released).

Therefore, the Court will order that the agencies release the small portion of redacted documents submitted for *in camera* review that the Court has found to not be covered by any exemption, but otherwise will grant the agencies summary judgment in full.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 73) is **GRANTED IN PART AND DENIED IN PART, and, as explained above, the agencies are ordered to release a small amount of previously withheld information.**[7]  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 27, 2018                                            RUDOLPH CONTRERAS
                                                                                          United States District Judge

---

[7] While Hunton has not moved for summary judgment, "[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).  Defendants were on notice here and in fact did come forward with all their evidence through their motion for summary judgment.